UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| ERIC DEWAYNE WILLIAMS,  )<br>  )<br>       Plaintiff,  )<br>  )<br>v.  )<br>  )<br>  )<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of Social Security,  )<br>  )<br>       Defendant.  ) | CIVIL ACTION NO.<br>5:14-CV-125-BG<br>ECF |

**REPORT AND RECOMMENDATION**

*Pro se* Plaintiff Eric Dwayne Williams brings this action appealing a decision of the Social Security Administration in which an Administrative Law Judge (ALJ) denied his application for supplemental security income (SSI). The district court transferred the action to the undersigned magistrate judge, but both parties did not consent to proceed before a magistrate judge.

The undersigned has liberally construed the arguments in Williams' brief. *See Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 629 (5th Cir. 2014) (acknowledging that the court liberally construes a *pro se* brief and applies less stringent standards to a party appearing *pro se*). However, after considering the parties' arguments and the administrative record, the undersigned recommends, based on the applicable law, that the district judge affirm the ALJ's decision and dismiss this action.

**I.     Background Facts**

Williams filed his application for SSI the month he turned 47 years old. (Tr. 37, 117.) He has a GED and has worked sporadically in the restaurant industry, janitorial services, assembly line services, and other industries. (Tr. 38, 144–46, 149.) He last worked for one month as a

restaurant cook; he was discharged when he told his employer that he could not come to work for a shift. (Tr. 39–40.) Williams' work history is not at issue in this case.

At a time closely after he lost his restaurant job, Williams filed his application for SSI. (Tr. 117, 132, 136.) He reported in his application that he was limited in his ability to work because of pain in both of his knees, weakness in his right leg that affected his ability to walk, and pain in his back. (Tr. 159.) He explained during a hearing before the ALJ that his condition was, in part, due to an accident that he was involved in when he was a child. (Tr. 42.) He testified that his injury caused his right leg to grow "a curve different than the other one" and that walking put a strain on the leg and that he suffered from tremors and pain as a result. (Tr. 42–44.) He further testified that he experienced chronic back pain that affected him at times during the early morning and night, pain that caused his "legs to give out," and pain in his legs and feet. (Tr. 48–50, 53.)

The ALJ found that Williams was capable of performing jobs despite his impairments and was not, therefore, disabled. (Tr. 28.) Williams sought review from the Appeals Council and submitted with his appeal evidence related to physical therapy that he underwent at a sports medicine facility. (Tr. 1–5.) After the Appeals Council denied review, Williams brought this appeal.

Williams brings a number of points of error. Construing his Complaint liberally, he contends that the ALJ erred at step three of the sequential evaluation and incorrectly assessed medical evidence. He also contends that the Appeals Council committed error in regard to the evidence he submitted with his appeal.

## II. Standard of Review

The ALJ uses a five-step evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920 (2014).[1] A court, on the other hand, is limited to two determinations when reviewing a decision of the Social Security Administration: the court may determine only (1) whether the ALJ applied the proper legal standards in reaching his decision and (2) whether his decision is supported by substantial evidence on the record as a whole. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). The court must consider all the evidence, including evidence that is contrary to the ALJ's decision, and then determine whether substantial evidence supports the Social Security Administration's final determination. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

The ALJ's decision becomes the final decision of the Social Security Administration after the claimant seeks review from the Appeals Council and the council either grants or denies review. *Id.* at 337; *see also* 20 C.F.R. § 416.1481 (decision of Appeals Council is "binding" and, thus, final decision). The undersigned has therefore considered the ALJ's decision as well as the decision of the Appeals Council and its determination regarding the evidence Williams submitted with his request for review. *See Higginbotham*, 405 F.3d at 337–38 (holding that a district court must consider evidence that a claimant submits to the Appeals Council).

---

[1] The Commissioner of Social Security uses regulations to determine whether a claimant is disabled. These regulations are located in the Code of Federal Regulations and can be accessed at www.ecfr.gov.

**III.    Discussion**

In the first three steps of the five-step sequential evaluation, the ALJ makes determinations regarding whether the claimant is working, whether he or she has an impairment or combination of impairments that are severe, and whether his or her impairments meet or medically equal one of the listings in the regulations. 20 C.F.R. § 416.920. In this case, the ALJ found at the first step of the evaluation that Williams was not working and determined at the second step that he suffered from mild to moderate back and leg pain, which he determined were "severe" impairments. (Tr. 23.)

At the third step of the evaluation, which Williams contests, the ALJ is required to compare the claimant's impairment(s) with listings contained in the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If the ALJ determines that the claimant's impairment(s) meet or medically equal the criteria of one of the listed impairments, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Id*. at 390. However, a claimant will not be presumed disabled under a listing unless his impairments meet or equal each of the specified criteria of the listing at issue, and the burden is on the claimant to make this showing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

The ALJ determined that Williams did not have an impairment or combination of impairments that meet or medically equal a listing in the Commissioner's regulations, and he specifically noted that he considered Listing 1.04, the listing for disorders of the spine. (Tr. 23.)

Listing 1.04 requires medical findings of a disorder of the spine, such as spinal arachnoiditis, spinal stenosis, osteoarthritis, or degenerative disc disease that results in the compromise of a nerve root or the spinal cord. 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04. Another requirement is a finding that the claimant is unable to ambulate effectively. § 1.04(C). The ALJ determined that there was

4

no evidence of nerve root compression, spinal arachnoiditis, or lumbar stenosis and, further, that the evidence did not show that Williams was unable to ambulate effectively.

The ALJ's determinations are supported by substantial evidence. First, as the ALJ found, the evidence does not contain medical findings of nerve root compression, spinal arachnoiditis, or spinal stenosis. The evidence shows the contrary and includes, for example, a physician's report that Williams has normal range of motion in his back (Tr. 200) and an x-ray that shows no compression, no degenerative changes, and normal alignment (Tr. 251). The radiologist who analyzed the x-ray report noted that there were no findings to explain Williams' back pain. *Id*.

Second, as the ALJ found, there is no evidence that Williams is unable to ambulate effectively. An "inability to ambulate effectively" means an extreme limitation in the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete daily activities. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(b)(2). Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes that would require use of both arms; inability to walk a block at a reasonable pace on rough or uneven surfaces; and inability to carry out routine activities such as shopping and banking. *Id*.

Williams testified that he uses a cane to help with balance when he leaves his home. (Tr. 47.) However, as noted above, in order to meet the criteria of Listing 1.04, there must be evidence that Williams uses assistive devices, such as a walker or two canes, that limit his ability to use both of his arms. There is no such evidence in the record. In addition, although the undersigned does not doubt that Williams' impairments impair to a degree his ability to walk, his impairments do not render him incapable of ambulating effectively to an extent that is disabling. Williams noted in his

SSI application that he is able to walk two blocks, shop for clothing, go to church and/or a library on a daily basis, and walk from the church to the library. (Tr. 160, 163–64.)

Turning to his next point of error, Williams' contentions regarding the ALJ's analysis of the medical evidence are not supported by the record. Williams argues that the ALJ erred in finding that he did not suffer from degenerative disease in his back. As already noted, an x-ray of Williams back showed no evidence of degenerative disk disease. (Tr. 251.) In addition, as the ALJ noted, a doctor who examined Williams in July 2012 reported negative straight leg test; no palpable muscle spasms; normal sensory examination; and no evidence of musculoskeletal deformity or joint swelling. (Tr. 243–45.) Although the doctor reported that Williams exhibited some decreased muscle strength and decreased range of motion in his back, he noted that Williams gave "extremely poor effort" during the strength testing portion of the examination and poor effort during the range of motion examination. (Tr. 243, 245.) He was of the opinion that Williams was "confabulating how much strength he had." (Tr. 245.) He also believed that Williams was capable of sitting, standing, and walking normally in an eight-hour day, did not need an assistive device, and could perform requirements of work. *Id*. The foregoing is substantial evidence sufficient to uphold the ALJ's determination that Williams' back impairment is not disabling.

There is likewise substantial evidence to support the ALJ's determination that Williams' knee impairments are not disabling. Williams underwent x-rays of his left and right knees in April 2011 after he was involved in a car accident. (Tr. 218–19.) The result of the x-rays were normal with the exception of slight joint swelling and small spurs in Williams' right knee. *Id*. Williams underwent an x-ray of his right knee again in July 2012 and the results of this x-ray were normal: the x-ray showed no degenerative changes, fracture, swelling, lesions, or dislocation. (Tr. 250.) Upon

physical examination Williams was able to squat and rise without assistance and was capable of walking with normal gait. (Tr. 244–45.)

It is important to note that evidence of some impairment or pain does not mean that the ALJ must find the claimant disabled. Pain is not disabling unless it is constant, unremitting, and wholly unresponsive to therapeutic treatment. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citation omitted). The ALJ is given the discretion to determine the disabling nature of a claimant's pain, and the decision as to whether a claimant is able to work despite pain will be upheld if supported by substantial evidence. *Id*.

Determinations as to how the claimant's impairments limit his ability to work and whether he can work despite his pain and limitations are made at the fourth and fifth steps of the evaluation process. At these steps, the ALJ must first determine the claimant's residual functional capacity, which is defined as the most the claimant can do despite his or her impairments and then determine whether, based on the claimant's residual functional capacity, he can perform either his past work or other work. 20 C.F.R. §§ 416.920(f), (g), 416.945(a)(5).

The ALJ in this case determined that Williams is capable of performing light work that requires only occasional stooping, crouching, kneeling, and crawling and that, although Williams can perform light work, he cannot perform any of his past jobs because of his limited ability to stoop, crouch, kneel, and crawl (Tr. 23, 27.)

After an ALJ finds that the claimant is not able to perform his or her past work, he then proceeds to step five in order to determine whether the claimant can perform other work in the national economy. 20 C.F.R. § 416.920(g). The ALJ must show that, considering the claimant's physical abilities, age, education, and past work experience, he is capable of

7

performing work that exists in substantial numbers in the national economy. *Perez*, 415 F.3d at 461. The ALJ may make this determination by relying on testimony from a vocational expert: "a vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). If the ALJ determines that the claimant can perform other work in the economy, the burden is on the claimant to rebut that finding. *Perez*, 415 F.3d at 461.

The ALJ relied on testimony from a vocational expert and determined that Williams is capable of working as a folding machine feeder, small products assembler, and electronic worker. (Tr. 28.) Williams has not argued that he is incapable of working at these jobs. And substantial evidence supports the ALJ's determination that Williams can work at such jobs. Because the ALJ's determination at step five is supported by substantial evidence, it is conclusive and his ultimate determination of "no disability" must be affirmed. *Perez*, 415 F.3d at 461.

Williams' final argument concerns his appeal to the Appeals Council and its finding in regard to evidence he submitted with his appeal. As way of background, Williams submitted records from University Medical Center Rehab and Sports Medicine at Zach's Club with his appeal to the Appeals Council, and the council considered the additional evidence but determined that the records were already in the evidence and that they did not provide a basis for changing the ALJ's decision. (Tr. 2–5.) Williams contests the council's determination and contends that the evidence was not part of the record that the ALJ considered.

The records that Williams submitted to the Appeals Council show that Williams underwent physical examination for lower back pain on May 30, 2013, and that the doctor prescribed mobic for pain and referred Williams to physical therapy. (Tr. 280, 283.) The records also show that Williams

underwent physical therapy in June 2013, was released from therapy in July 2013, and was referred back to the doctor who assessed him in May 2013 "due to lack of progress." (Tr. 285–86.)

Although the records are now in the administrative record, as Williams correctly argues, it is clear that the ALJ did not consider them. In fact, he could not have considered them because they could not have been in the record at the time he made his decision: they were generated in June and July 2013 after the ALJ issued his decision on May 31, 2013. (Tr. 29, 285–86.) This explains why, as Williams points out, the ALJ stated that the physician prescribed physical therapy in May 2013, but "there is no evidence that he completed either." (Tr. 26.) According to the physical therapy records Williams submitted to the Appeals Council, Williams, in fact, underwent the prescribed physical therapy.

Thus, the evidence Williams submitted to the Appeals Council is new evidence because the physical therapy records were not in the evidence that the ALJ considered. In cases in which new evidence is generated after the ALJ issues his decision, the court may remand the case for consideration of the evidence if it is material. *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). "For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the [ALJ's] decision." *Id*. (internal quotation marks omitted); *see also Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987) (finding no reasonable probability that new evidence would change the outcome of the ALJ's decision where evidence was cumulative and would add little to the evidence). Some evidence is "of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).

This is the situation in this case. The physical therapy records are not material because there is no reasonable probability that the ALJ's review of the records would change the ultimate outcome for Williams. The records show that Williams did, in fact, attend physical therapy, and notations on the therapy records show that he exhibited limited range of motion and experienced pain, (Tr. 285–86), but, given the other medical evidence in the record, the physical therapy records do not provide a basis for finding that Williams is more limited in his physical abilities than the ALJ found.

In addition, the Appeals Council's error may must be characterized as "harmless error." Error is regarded as "harmless" when it does not compromise the ultimate conclusion. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error where it was "inconceivable that the ALJ would have reached a different conclusion" in absence of the error). As the Appeals Council found, the records do not provide reason to reverse the ALJ's decision. Accordingly, it would be a waste of judicial resources to remand Williams' case for the purpose of requiring the ALJ to discuss the evidence. It should be noted that procedural perfection is not required in administrative proceedings; a court must not vacate a decision unless the alleged error affected the claimant's substantial rights. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Procedural imperfections constitute a basis for remand only if such would "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Id*. Thus, although the Appeals Council's error may be frustrating to Williams, it is not an error that casts doubt on the ALJ's decision nor does it detract from the substantial evidence that supports the decision.

Finally, although the undersigned sympathizes with Williams for the pain and limitation he experiences because of his impairments, given the medical evidence in the record and the law

applied to Social Security appeals, the undersigned concludes that substantial evidence supports the ALJ's ultimate decision of "no disability" in this case. Accordingly, it is recommended that the district court affirm the decision in Williams' SSI case and dismiss this action.

IV. **Right to Object**

The Clerk shall serve a copy of this Report and Recommendation on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 14, 2015.

_____
NANCY M. KOENIG
United States Magistrate Judge